# §UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:<br><br>Diocese of Winona-Rochester,<br><br>Debtor. | Bankruptcy Case No. 18-33707 (RJK)<br><br>Chapter 11 |
| Diocese of Winona-Rochester,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES FIRE INSURANCE COMPANY, a Delaware corporation; CERTAIN UNDERWRITERS AT LLOYD'S, a foreign insurance syndicate; INTERSTATE FIRE & CASUALTY COMPANY, an Illinois corporation; NATIONAL SURETY CORPORATION, a Delaware corporation; 21st CENTURY CENTENNIAL INSURANCE COMPANY (f/k/a COLONIAL PENN INSURANCE COMPANY), a Pennsylvania corporation; ST. PAUL SURPLUS LINES INSURANCE COMPANY, a Delaware corporation; NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, a Wisconsin corporation, formerly BELLEFONTE INSURANCE COMPANY, a Kentucky corporation; MARKEL INTERNATIONAL INSURANCE COMPANY LIMITED, a U.K. private limited company, formerly TERRA NOVA INSURANCE CO. LTD., a U.K. private limited company; CATALINA HOLDINGS U.K. LIMITED, a private limited company, formerly EXCESS INSURANCE CO. LTD., a U.K. private limited company; SOMPO JAPAN NIPPONKOA INSURANCE COMPANY OF EUROPE LIMITED, a U.K. private limited company, formerly YASUDA FIRE AND MARINE INSURANCE CO. (U.K.) LTD., a U.K. private limited company; DOMINION INSURANCE CO. LTD., a U.K. private limited company; CX REINSURANCE COMPANY LTD., a private limited company, formerly CNA REINSURANCE OF LONDON LTD., a U.K. private limited company; STRONG HOLD INSURANCE CO. LTD., a U.K. private limited | Adversary Proc. No. 18-03094 |

| | |
|---|---|
| company; SPHERE DRAKE INSURANCE PLC (N/K/A SPHERE DRAKE INSURANCE LIMITED), a U.K. public limited company; ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota corporation, formerly ST. KATHERINE INSURANCE CO. PLC, a U.K. public limited company; ASSICURAZIONI GENERALI SPA, an Italy corporation,<br><br>Defendants, | |

**NOTICE OF HEARING AND RENEWED MOTION TO WITHDRAW THE REFERENCE TO THE BANKRUPTCY COURT PURSUANT TO 28 U.S.C. § 157(d), FEDERAL RULE OF BANKRUPTCY PROCEDURE 5011, AND LOCAL RULE 5011-1**

TO: The Plaintiff and other entities specified in Local Bankruptcy Rule 9013

---

1.      United States Fire Insurance Company ("U.S. Fire"), a defendant and counter-plaintiff in the above-captioned adversary proceeding ("Adversary Proceeding"), hereby moves for withdrawal of the reference of all the claims in the Adversary Proceeding from the Bankruptcy Court ("Motion").

2.      The Court will hold a hearing on the Motion at a time to be determined after the Clerk of the Bankruptcy Court transmits the Motion to the Court.  The hearing will be held at the District Court located at 300 South Fourth Street, 202 U.S. Courthouse, Minneapolis, MN 55415.

3.      Any response to the Motion must be filed and served within fourteen days of service, of the Motion.  **UNLESS A RESPONSE OPPOSING THE MOTION IS FILED TIMELY, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING**.

4.      The Court has original jurisdiction over the Motion pursuant to 28 U.S.C. § 1334(a).

## PROCEDURAL AND FACTUAL BACKGROUND

5.      U.S. Fire issued various policies of insurance to the Diocese of Winona-Rochester ("the Diocese").  The Diocese now contends that U.S. Fire also issued additional excess policies of insurance from 1967-1976.  U.S. Fire denies the existence of these alleged policies.

6.      In 2013, Minnesota created a temporary, three-year window in its civil statute of limitations to allow victims of child sexual abuse with time-barred claims to file lawsuits for damages.  Minn. Stat. § 541.073 (2013).  This window allowed individuals to file lawsuits against the Plaintiff alleging that they had suffered injuries resulting from sexual abuse caused by the Plaintiff's negligence ("Underlying Claims").  Notice of Removal p. 19, Complaint for Declaratory Relief ¶ 28; Notice of Removal p. 301.  The Diocese seeks coverage for multiple claims alleging abuse, including claims based on alleged abuse by former priest Fr. Thomas Adamson ("Adamson").   U.S. Fire has accepted coverage and agreed to provide a defense for the "non-Adamson" claims.  With respect to the claims alleging abuse by Adamson, U.S. Fire has denied coverage based in part on the conclusion that the liability of the Diocese associated with the Adamson claims was "expected" or "intended" by the Diocese.

7.      U.S. Fire's denial of coverage for the Adamson claims is supported by two controlling rulings: the Eighth Circuit's decision in *Diocese of Winona v. Interstate Fire & Casualty Co.*, 89 F.3d 1386 (8th Cir. 1996) and the district court's ruling in *U.S. Fire Insurance Co. v. Diocese of Winona*, 503 F. Supp. 2d 1129 (D. Minn. 2007), both held the Diocese was not entitled to coverage for claims arising from Fr. Adamson's sexual abuse.  U.S. Fire contends that

as a result of these decisions, the Diocese is collaterally estopped from arguing that it did not "expect" Fr. Adamson's continued abuse.

8.      On July 18, 2018, the Plaintiff filed its Complaint in the Third Judicial District of the Minnesota Judicial Branch, case number 85-CV-18-1439, naming as defendants a number of its insurers, including U.S. Fire.  Notice of Removal p. 86, Notice of Case Filing and Assignment. The Plaintiff amended its Complaint on November 7, 2018.  *See* Notice of Removal p. 373, First Am. Compl. for Declaratory Relief ("Amended Complaint").  The Amended Complaint seeks an adjudication of its and its insurers', including U.S. Fire's, rights related to the underlying actions and claims.  Am. Compl. ¶ 35.

9.      None of Plaintiff's Claims arise under 11 U.S.C. § 1101, *et seq*. ("Bankruptcy Code").  Rather, Plaintiff's Claims include whether, under its insurance policies:

- the Underlying Claims constitute an "occurrence";
- the injuries alleged in the Underlying Claims constitute "bodily injury";
- the Underlying Claims constitute "personal injuries";
- the Underlying Claims fell within the periods covered by the insurance coverage; and,
- the Plaintiff provided timely notice of the Underlying Claims to its insurers.

Am. Compl. ¶ 38.  All of the Plaintiff's Claims arise under state law.

10.      The Plaintiff demanded a jury trial on Plaintiff's Claims.  Am. Compl. p. 11.  U.S. Fire similarly has a jury trial right and seeks a jury trial on Plaintiff's Claims.

11.      On November 30, 2018, the Plaintiff filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, in the Bankruptcy Court for the District of Minnesota.

12.      The Plaintiff removed the Adversary Proceeding to the Court from Minnesota state court on December 3, 2018.  *See* Docket No. 1.  The Court automatically referred the Adversary Proceeding to the Bankruptcy Court, pursuant to Local Rule 1071-1.

13.     Before filing the Motion, certain London Market Insurers ("LMI") filed a motion to transfer this Adversary Proceeding to this Court pursuant to Local Rule 5011-3(a) ("Transfer Motion").  Docket No. 18.   The Bankruptcy Court denied the Transfer Motion on January 24, 2018.  Docket No. 35.

14.     LMI also filed a motion to withdraw the reference (Docket No. 37) and other insurers, including U.S. Fire joined in the motion to withdraw the reference.

15.     On April 18, 2019, the District Court denied the motion to withdraw the reference without prejudice, in part because the parties were going to be engaged in mediation.  *See* Docket No. 48.

16.     On or about May 21, 2019, the Bankruptcy Court ordered the Diocese and its insurers to mediation and appointed John E. Vukelich as mediator.  On July 29, 2020, the court appointed Paul J. Van Osselaer as an additional mediator to supplement the efforts of Mr. Vukelich as the parties attempted to reach a negotiated resolution that included U.S. Fire.

17.     The Diocese filed its proposed plan of reorganization ("Plan") on February 9, 2021. The Plan expressly contemplates that the coverage issues will proceed to trial (see Plan at §§ 6.14(m), 7.3).  The Plan also contains insurance neutrality provisions (see, e.g., Plan at § 8.4), which purportedly prevent the Plan from having any impact on the parties' rights or obligations in the pending Adversary Proceeding.  It provides[1]:

> 8.4 THE PLAN IS NEUTRAL AS TO NON-SETTLING INSURER POLICIES.
> For the avoidance of doubt, solely with respect to the Non-Settling Insurers, nothing in the Plan, the Trust Agreement, the Trust Distribution Plan, the Confirmation Order, or any other order of the Bankruptcy Court to the contrary (including any other provision that purports to be preemptory or supervening or grants a release): (i) shall affect, impair, or prejudice the rights and defenses of any Non-Settling Insurer, any Protected Party, the Trust, or any other insureds under Non-Settling Insurer Policies in any manner, including

---

[1] By making this motion, U.S. Fire does not waive any objections to the Plan, including any argument that the insurance neutrality is not complete.

any defenses to any claim for insurance; (ii) shall constitute a settlement or resolution of any Protected Party's liability to a Tort Claimant; (iii) shall in any way operate to, or have the effect of, impairing or having any res judicata, collateral estoppel, or other preclusive effect on, any party's legal, equitable, or contractual rights or obligations under any Non-Settling Insurer Policy; or (iv) shall otherwise determine the applicability or nonapplicability of any provision of any Non-Settling Insurer Policy and any such rights and obligations shall be determined under the Non-Settling Insurer Policy and applicable law.

18.     On February 24, 2021, the mediators appointed by the Bankruptcy Court declared an impasse.  The Debtor subsequently circulated a proposed stipulation to restart the stayed Adversary Proceeding.

## BASIS FOR RELIEF

19.     As discussed in the concurrently filed memorandum of law, the basis for the relief sought in the Motion is 11 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011, and Local Rule 5011-1.  Withdrawing the reference is appropriate where, as here, the request is timely and cause exists to withdraw the reference.

20.     The request is timely because U.S. Fire is filing immediately after the mediators declared an impasse in the pending mediation.  No material events have occurred in the Adversary Proceeding in the interim, which has remained stayed since the Bankruptcy Court's mediation order.

21.     Courts in this District consider six factors to determine whether cause exists to withdraw the reference.  *Kelley v. Opportunity Fin., LLC*, Civ. No. 14-3375, 2015 WL 321536, at *2 (D. Minn. Jan. 26, 2015).  These factors are: (1) whether the claim is core to the bankruptcy proceedings; (2) the efficient use of judicial resources; (3) the delay and costs to the parties; (4) uniformity of bankruptcy administration; (5) the prevention of forum shopping; and (6) the presence of a jury demand.  Each of these factors weighs in favor of withdrawing the reference.

22. First, the insurance coverage claims involved in the Adversary Proceeding are outside of the Bankruptcy Court's core jurisdiction because they arise under state law. Moreover, because the Insurance Coverage Claims all raise private causes of action, the Bankruptcy Court is without Article III authority to adjudicate the Insurance Coverage Claims. Further, because the parties seek a jury trial, the Bankruptcy Court cannot make disputed factual determinations, because a jury must be the factfinder. Given the preceding points, the Bankruptcy Court can only send the District Court reports and recommendations on legal issues if the facts are undisputed.

23. With respect to the second and third factors, should the Motion be denied, the Bankruptcy Court will spend months, possibly years, familiarizing itself with the relevant facts and law. To date, the Bankruptcy Court has not gotten involved in insurance coverage disputes and the currently proposed Plan seeks to prevent the bankruptcy from impacting insurance rights. Moreover, because the parties have demanded, and are entitled to, a jury trial, and the Bankruptcy Court cannot issue final orders with respect any of the Insurance Coverage Claims because of its limited non-core jurisdiction and its lack of Article III authority, only the District Court can grant dispositive motions and hold the trial. U.S. Fire intends to, and the other parties likely will, contest any unfavorable legal conclusions issued as part of a report and recommendation by the Bankruptcy Court. (Because the Bankruptcy Court cannot make factual determinations due to the parties' jury trial rights, contests of such determinations should not come before the District Court.) Because U.S. Fire does not consent to the Bankruptcy Court's jurisdiction, the Court must review such legal conclusions *de novo*. Consequently, both the Bankruptcy Court and the District Court must expend the effort to become familiar with the relevant facts and law, duplicating the use of judicial resources. Withdrawal, at this time, would be more efficient and less costly for the Courts

and the parties.  *See, e.g., Opinion, In re Diocese of Duluth*, Civil No. 17-549, ECF No. 53, issued July 18, 2017.

24.     With respect to the fourth and fifth factors, there is no risk of non-uniform bankruptcy administration because the Insurance Coverage Claims do not implicate bankruptcy law.  Nor would withdrawal promote forum shopping. To the contrary, withdrawal would prevent a form of forum shopping in that the Plaintiff removed its own pending state court action to the Bankruptcy Court in the first instance.

25.     With respect to the final factor, only the District Court can grant summary judgment motions or hold the jury trial, which both parties have demanded.  Because U.S. Fire does not consent to the Bankruptcy Court overseeing any jury trial, the Bankruptcy Court is precluded from deciding any disputed facts in the Adversary Proceeding.  All six factors weigh in favor of withdrawing the reference.

WHEREFORE, U.S. Fire respectfully requests an order granting the Motion and withdrawing the reference for the Adversary Proceeding from the Bankruptcy Court; and granting such other relief as the Court deems just and proper.

Dated:  March 4, 2021

By:   s/Amy J. Woodworth
       Amy J. Woodworth (#026166X)
       Meagher & Geer, PLLP
       33 South Sixth Street, Suite 4400
       Minneapolis MN 55402
       (612)-338-0661
       awoodworth@meagher.com

Michael J. Cohen
Admitted *pro hac vice*
Pamela J. Tillman
Admitted *pro hac vice*
Meissner Tierney Fisher & Nichols
S.C.
111 E. Kilbourn Avenue, 19th Floor
Milwaukee, WI 53202
 (414) 273-1300
mjc@mtfn.com
pjt@mtfn.com

George R. Calhoun
Admitted *pro hac vice*
Ifrah PLLC
1717 Pennsylvania Ave., NW
Washington D.C.  20006
(202) 524-4147
george@ifrahlaw.com

**Attorneys for United States Fire**
**Insurance Company**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:<br><br>Diocese of Winona-Rochester,<br><br>        Debtor. | Bankruptcy Case No. 18-33707 (RJK)<br><br>Chapter 11 |
| Diocese of Winona-Rochester,<br><br>        Plaintiff,<br><br>  v.<br><br>UNITED STATES FIRE INSURANCE COMPANY, a Delaware corporation; CERTAIN UNDERWRITERS AT LLOYD'S, a foreign insurance syndicate; INTERSTATE FIRE & CASUALTY COMPANY, an Illinois corporation; NATIONAL SURETY CORPORATION, a Delaware corporation; 21st CENTURY CENTENNIAL INSURANCE COMPANY (f/k/a COLONIAL PENN INSURANCE COMPANY), a Pennsylvania corporation; ST. PAUL SURPLUS LINES INSURANCE COMPANY, a Delaware corporation; NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, a Wisconsin corporation, formerly BELLEFONTE INSURANCE COMPANY, a Kentucky corporation; MARKEL INTERNATIONAL INSURANCE COMPANY LIMITED, a U.K. private limited company, formerly TERRA NOVA INSURANCE CO. LTD., a U.K. private limited company; CATALINA HOLDINGS U.K. LIMITED, a private limited company, formerly EXCESS INSURANCE CO. LTD., a U.K. private limited company; SOMPO JAPAN NIPPONKOA INSURANCE COMPANY OF EUROPE LIMITED, a U.K. private limited company, formerly YASUDA FIRE AND MARINE INSURANCE CO. (U.K.) LTD., a U.K. private limited company; DOMINION INSURANCE CO. LTD., a U.K. private limited company; CX REINSURANCE COMPANY LTD., a private limited company, formerly CNA REINSURANCE OF LONDON LTD., a U.K. private limited company; STRONG HOLD INSURANCE CO. LTD., a U.K. private limited company; SPHERE DRAKE INSURANCE PLC | Adversary Proc. No. 18-03094<br><br>Civil No: |

| (N/K/A SPHERE DRAKE INSURANCE LIMITED), a U.K. public limited company; ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota corporation, formerly ST. KATHERINE INSURANCE CO. PLC, a U.K. public limited company; ASSICURAZIONI GENERALI SPA, an Italy corporation,<br><br>Defendants. |  |
| --- | --- |

**MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION TO WITHDRAW THE REFERENCE TO THE BANKRUPTCY COURT PURSUANT TO 28 U.S.C. § 157(d), FEDERAL RULE OF BANKRUPTCY PROCEDURE 5011, AND LOCAL RULE 5011-1**

## I.    INTRODUCTION

This Adversary Proceeding[1] is an action to determine the extent of insurance coverage for alleged claims for sexual abuse filed against the Plaintiff.  The Plaintiff filed this case in Minnesota State Court and removed it to the Bankruptcy Court after its bankruptcy filing.  As previously determined by this Court, the Insurance Coverage Claims fall outside of the Bankruptcy Court's core jurisdiction.  United States Fire Insurance Company ("U.S. Fire") demanded a jury trial on the Insurance Coverage Claims and does not consent to the Bankruptcy Court conducting a jury trial, or to the Bankruptcy Court's entry of final orders on non-core matters.

U.S. Fire's constitutional rights prevent the Bankruptcy Court from deciding the Adversary Proceeding's legal and factual issues.  Instead, this Court must decide the legal issues.  The Court must afford the Bankruptcy Court's legal conclusions no weight; such conclusions must be reviewed *de novo*.  Because the parties both seek a jury trial, all factual issues must be determined

---

[1]    Capitalized terms not defined in this memorandum shall take the meaning ascribed to them in the Motion.

2

through a jury trial conducted by this Court.  For these reasons and as further explained below, the Court should withdraw the reference from the Bankruptcy Court, at this time.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

The attached notice of hearing and motion recites the pertinent factual background.

## III.    ARGUMENT

Under the provisions of 28 U.S.C. § 1334(a), district courts are given original and exclusive jurisdiction of all cases under Title 11 of the United States Code, which concerns bankruptcy proceedings.  Conversely, 28 U.S.C. § 1334(b) provides that when a civil proceeding arises under Title 11, or arises in or relates to a case under Title 11, "the district court[] shall have original but not exclusive jurisdiction."  Pursuant to 28 U.S.C. § 157(a), a district court has the discretion to refer to the bankruptcy court "any or all cases under [T]itle 11 and any or all proceedings arising under [T]itle 11 or arising in or related to a case under [T]itle 11 . . . ."  In this District, the Court automatically refers all bankruptcy cases and related adversary proceedings to the Bankruptcy Court.  LR 1070-1.  The Court may withdraw such reference on a "timely" motion and "for cause shown." 28 U.S.C. § 157(d)[2]; *Vreugdenhil v. Hoekstra*, 773 F.2d 213, 215 (8th Cir. 1985).  District courts have "broad discretion to withdraw the reference for cause."  *In re Enron* Corp., 295 B.R. 21, 25 (S.D.N.Y. 2003) (internal citations omitted).

### A.     U.S. Fire Satisfied Local Rule 5011-1 Before Filing the Motion

Under the Local Rules, before moving to withdraw the reference, a movant must "show that relief by way of abstention, remand or transfer was first sought and not obtained or could not be sought from the bankruptcy court."  Local R. 5011-1.  Those avenues of relief were exhausted

---

[2]     The Court hears the motion after the movant files it with the Bankruptcy Court.  Fed. R. Bankr. P. 5011; Local R. 5011-1.

in connection with the original motion to withdraw the reference filed by LMI and joined by U.S. Fire.

**B.      This Motion is Timely**

The "test for timeliness is ultimately one of reasonableness under the circumstances." *In re H & W Motor Express Co.*, 343 B.R. 208, 213 (N.D. Iowa 2006).  The timeliness requirement seeks to prevent parties from "forum shopping, stalling, or otherwise engaging in obstructionist tactics[.]" *Strauss v. Cole*, No. 2:17-CV-00836-NKL, 2017 WL 6643995, at *3 (W.D. Mo. Dec. 29, 2017) (citations and internal quotation marks omitted) (determining that a motion to withdraw the reference five years into litigating the case is untimely).  Here, the parties originally filed a motion to withdraw the reference as soon as the Bankruptcy Court denied LMI's motion to transfer. This Court denied that motion without prejudice pending an effort to mediate the Parties' disputes. U.S. Fire has filed this motion promptly upon completion of the mediation.

**C.      Cause Exists to Withdraw the Reference**

The Eighth Circuit has approved of withdrawal of the reference where the cause of action at issue is not a core proceeding the party asserting it has demanded a jury trial.  *See Vreugdenhil v. Hoekstra*, 773 F.2d at 215 n.2 ("withdrawal of cause [of action] from bankruptcy court may be appropriate, because under 28 U.S.C. § 157(c)(1) bankruptcy court in such circumstances could not enter final judgment") (*quoting Macon Prestressed Concrete Co. v. Duke*, 46 B.R. 727, 730 (M.D. Ga. 1985)).

Courts consider six factors in determining whether cause exists to withdraw the reference: These factors are:

> (1) whether the claim is core to the bankruptcy proceedings;
>
> (2) the efficient use of judicial resources;
>
> (3) the delay and costs to the parties;

      (4)  uniformity of bankruptcy administration;

      (5)  the prevention of forum shopping; and

      (6)  the presence of a jury demand.

*Kelley*, Civ. No. 14-3375, 2015 WL 321536, at *2.  Cause exists to withdraw the reference because

each factor weighs in favor of withdrawing the reference.

> **1.**      **Factor 1—The Insurance Coverage Claims are not Core and the Bankruptcy Court cannot issue final orders**

      Whether a claim is within the Bankruptcy Court's core or non-core jurisdiction, and

hence whether the Bankruptcy Court can enter a final order, is "the most important factor" in the

withdrawal analysis.  *Kelley v. JPMorgan Chase & Co.*, 464 B.R. 854, 861 (D. Minn. 2011).

Here, this Court already has determined that the Adversary Proceeding involves non-core claims.

*See* Docket No. 48 ("Both parties agree that the insurance coverage claims in the adversary

proceeding do not arise under Title 11 or arise in the context of a bankruptcy case. Thus, the

bankruptcy court's jurisdiction over these claims is non-core.").

      The Court must also determine whether the Bankruptcy Court has the authority under

Articles I and III of the Constitution to enter final orders.  *See Stern v. Marshall*, 564 U.S. 462

(2011).  The Bankruptcy Court does not have the jurisdiction or the authority under Article III to

enter final orders with respect to the state law insurance coverage issues involved in the

Adversary Proceeding, which this Court already has found to be non-core.

      The Bankruptcy Court cannot infringe on the parties' Article III rights.  Absent consent,

the Bankruptcy Court may hear but cannot enter final orders on non-core proceedings.  *Exec.*

*Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014); 28 U.S.C. § 157(c).  Instead, the

Bankruptcy Court must submit proposed findings of fact and conclusions of law to the Court.  *Id.*

Thus, the question of whether the Bankruptcy Court can enter final orders on the Insurance

Coverage Claims, which is the most important factor, strongly supports withdrawing the reference.

### 2.   Factor 6—U.S. Fire's jury right prevents the Bankruptcy Court from making disputed factual determinations

Factor 6 is related to the first factor.  The presence of a jury trial right requires withdrawing the reference.  *In re Daewoo Motor Am., Inc.*, 302 B.R. 308, 314 (C.D. Cal. 2003); *see*, *e.g.*, *In re Lenders Abstract & Settlement Serv. Inc.*, 493 B.R. at 397 ("Accordingly, the Court finds that [movant] is entitled to a jury trial in this Adversary Proceeding, which is an adequate ground for this Court to grant [the] motion to withdraw the reference.").  The Court previously determined that it could not determine if the defendants had a jury trial right "until after mediation has run its course."  Docket 48 at 9.  The mediation has now run its course and it is apparent that the parties continue to have factual disputes that will require trial.

Because U.S. Fire has a right to a jury trial in the Adversary Proceeding, an Article III court must preside over the trial.  It is well settled that "the right to a jury trial in the federal courts is to be determined as a matter of federal law…."  *Simler v. Conner*, 372 U.S. 221, 222 (1963) (*per curiam*).  This is true regardless of whether the claim arises under state law, *GTFM, LLC v. TKN Sales, Inc.*, 257 F.3d 235, 240 (2d Cir. 2001), and "even when a state statute or state constitution would preclude a jury trial in state court."  *Gipson v. KAS Snacktime Co.*, 83 F.3d 225, 230 (8th Cir. 1996) (citations omitted).  The right to a jury trial in a declaratory relief action is also preserved in federal court.  *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504-508 (1959). Trial by jury is a right guaranteed to parties in suits "at common law" by the Seventh Amendment to the Constitution.  U.S. Const. amend. VII.  This guarantee is reiterated in the Federal Rules of Civil and Bankruptcy Procedure which requires that "[t]he right of trial by jury . . . shall be preserved . . . inviolate."  Fed. R. Civ. P. 38(a); Fed. R. Bankr. P. 9015(a) ("Rule[] 38 . . . appl[ies] in cases

and proceedings . . . .").  The phrase, "Suits at common law" refers to "suits in which *legal* rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered."  *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (U.S. 1990) (quoting *Parsons v. Bedford,* 3 Pet. 433, 447, 7 L.Ed. 732 (1830)).

Declaratory actions are not, in themselves, legal or equitable.  *Am. Safety Equip. Corp. v. J. P. Maguire & Co.*, 391 F.2d 821, 824 (2d Cir. 1968).  To determine whether parties to a declaratory action have a Seventh Amendment right to a jury, courts look to the nature of the claims to determine if, absent a procedure for declaratory damages, the case would have been tried by a court or a jury.  *Indiana Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.*, 195 F.3d 368, 374 (8th Cir. 1999); *see Simler v. Conner*, 372 U.S. 221, 223 (1963) ("The fact that the action is in form a declaratory judgment case should not obscure the essentially legal nature of the action."); *In re Mathews*, 203 B.R. 152, 158–59 (Bankr. D. Minn. 1996) ("[T]he entitlement to a jury trial is established by 'what kind of suit the claim would have come to court [in,] if there were no declaratory judgment remedy.'") (quoting *Owens–Illinois, Inc. v. Lake Shore Land Co., Inc.*, 610 F.2d 1185, 1189 (3d Cir. 1979)).  There is "no doubt that the parties to a declaratory judgment proceeding presenting legal issues are entitled to a trial by jury as of right".  *Firemen's Ins. Co. of Newark, N. J. v. Smith*, 180 F.2d 371, 374 (8th Cir. 1950).

The plaintiff seeks declaratory relief in the Adversary Proceeding regarding its contractual rights and obligations under certain insurance agreements.  Declaratory actions to determine the availability and extent of insurance coverage are legal disputes for money damages.  *Indiana Lumbermens Mut. Ins. Co.*, 195 F.3d 368, 374 (8th Cir. 1999). Thus, they give rise to jury rights. *Id.*; *Johnson v. Fidelity & Casualty Co.,* 238 F.2d 322, 324 (8th Cir. 1956).

7

While parties may consent to have a jury trial conducted by the bankruptcy court by "filing a statement of consent". Fed. R. Bankr. P. 9015(b), U.S. Fire has not consented, and does not consent, to the Bankruptcy Court conducting the jury trial. *See* Docket No. 3.

U.S. Fire's jury trial right weighs strongly in favor of withdrawal of the reference. *Mirant Corp. v. The S. Co.*, 337 B.R. 107, 122 (N.D. Tex. 2006) ("[T]here must be a withdrawal of the reference as to claims to which the right to trial by jury attach."); *In re Clay*, 35 F.3d 190, 191 (5th Cir. 1994). In *Clay*, the Fifth Circuit faced the question of whether Bankruptcy Courts can conduct jury trials on non-core claims absent the parties' consent. *In re Clay*, 35 F.3d at 191. The court acknowledged the inefficient procedure of shifting the jury trial to the District Court after the Bankruptcy Court conducted all pre-trial proceedings, as it "would interrupt ongoing proceedings and split proceedings between bankruptcy and district courts." *Id.* at 195. They noted, "district courts have far more expertise" in conducting "long jury trials" than the Bankruptcy Court. To resolve this, the Fifth Circuit stated that the "district court could avert split proceedings by withdrawing the reference to the bankruptcy court." *Id.*

As in *Clay*, this Adversary Proceeding also contains exclusively non-core claims to which U.S. Fire has a jury right. This requires a "split proceeding" because the District Court must conduct the jury trial. Averting split proceedings and avoiding interruption favors withdrawing the Adversary Proceeding now.

### 3.    Factors 2 and 3--Withdrawing the Reference Promotes Judicial Economy and Reduces the Parties' Costs

Judicial economy requires courts to avoid expending duplicative effort. *See Matter of Trusts established under the Pooling & Servicing Agreements relating to the Wachovia Bank Commercial Mortg. Tr. Commercial Mortg. Pass-Through Certificates, Series 2007-C30*, 241 F. Supp. 3d 905, 930 (D. Minn. 2017). Because the Insurance Coverage Claims are only within the

Bankruptcy Court's non-core jurisdiction, and the Bankruptcy Court does not have authority under Article III to determine the Insurance Coverage Claims, it is more efficient to withdraw the reference of the Insurance Coverage Claims.  In its April 18, 2019 decision, this Court concluded that judicial economy would not be served by withdrawal because "the parties intend to engage in mediation, and it is not yet certain that the adversary proceeding will need to be resolved through a jury trial."  Docket No. 48 at 11.  The Court further noted that "the continued referral of pretrial proceedings to the bankruptcy court increases judicial efficiency" and concluded that the motion for withdrawal was "premature."  Following the declaration of an impasse in the mediation, and the Plaintiff's apparent intention to move forward with a Plan that passes insurance coverage issues through for later litigation, this Motion can no longer be said to be premature.  And given the Plaintiff's intention to litigate the Adversary Proceeding – and to assign its continued prosecution to an eventual claimants' trust – judicial efficiency is best served by withdrawal of the reference now.

When non-core insurance coverage litigation is commenced in bankruptcy court and there is no preexisting non-bankruptcy forum for the matter to be referred to, district courts routinely withdraw the reference so that unnecessary duplication of effort is avoided, and the matter can be determined with finality in a single proceeding.  *See, e.g., Diocese of Duluth v. Liberty Mutual Group, et al. (In re Diocese of Duluth)*, Case No. 17-00549, ECF No. 53 (D. Minn. July 18, 2017) (holding adversary proceeding where the Diocese of Duluth sought a declaratory judgment on the extent, if any, of insurance coverage owed to the Diocese to be non-core, and granting the insurers' motion to withdraw the reference because "judicial efficiency [would] be promoted by withdrawing the reference"); *Archdiocese of Milwaukee, et al. v. Stonewall Insurance Company, et al. (In re Archdiocese of Milwaukee)*, Case No. 13-00060, ECF No. 9 (E.D. Wis. Feb. 23, 2013)

(immediate withdrawal of the reference was appropriate where the court determined an adversary proceeding filed by the Archdiocese of Milwaukee seeking a declaratory judgment as to the extent, if any, of insurance coverage owed to the Archdiocese was a non-core proceeding and judicial efficiency weighed in favor of withdrawing the reference and allowing the district court to familiarize itself with the proceeding and avoid duplicative proceedings in the bankruptcy court); *Catholic Bishop of Northern Alaska v. Continental Ins. Co., et al. (In re Catholic Bishop of Northern Alaska)*, Case 08-90019, ECF No. 5 (D. Alaska Oct. 21, 2008) (finding declaratory judgment insurance coverage action substantially similar to the current Adversary Proceeding to be non-core, that the Diocese's claims are not transformed into core proceedings because insurance coverage is an asset of the estate, and granting a motion to withdraw the reference); *see also Silverman v. Tudor Ins. Co. (In re Lenders Abstract & Settlement Serv.)*, 493 B.R. 385 (E.D.N.Y. 2013); *DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587 (S.D.N.Y. 2012); and *In re Lawrence Group, Inc.*, 285 B.R. 784 (N.D.N.Y. 2002).

The Bankruptcy Court cannot make final legal determinations on the Insurance Coverage Claims. It can only enter proposed findings (on undisputed facts) and legal conclusions, all of which must come to the Court for review and entry of a final order. *See* 28 U.S.C. § 157(c). Moreover, both U.S. Fire and the Plaintiff have demanded a jury trial and thus every factual issue must be determined through a jury trial conducted by the Court. 28 U.S.C. § 157(e). Therefore, the Court must conduct the trial. 28 U.S.C. § 157(d). This prevents the Bankruptcy Court from disposing of factual issues. Thus, the Court, not the Bankruptcy Court, must make legal and factual determinations on the Insurance Coverage Claims. "It would be inefficient to allow these proceedings to go forward, knowing that they will have to be substantially repeated." *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 472 (S.D.N.Y. 2011).

"[T]he court's finding that the claim is non-core coupled with defendants' jury demand is sufficient cause to withdraw the reference." *In re The VWE Grp., Inc.*, 359 B.R. 441, 451 (S.D.N.Y. 2007)).

Even the Bankruptcy Court's interlocutory orders are subject to the Court's review.  28 U.S.C. § 158(a)(3); *In re Hayes Bankr.*, 220 B.R. 57, 59 (N.D. Iowa 1998) ("a litigant . . . may seek leave to appeal interlocutory (which is to say, non-final) orders and decrees.").  This imposes additional burdens on the Court.  Even if the Court were to deny such appeals, the Court still must evaluate each request and decide whether to grant leave.

Moreover, the bankruptcy court has not yet invested significant time and resources in this dispute.  Thus, the Diocese cannot reasonably argue that it would be a waste of judicial resources to move the Adversary Proceeding to this Court at this time.  *See, e.g., Silverman v. Tudor Ins. Co. (In re Lenders Abstract &Settlement Serv.)*, 493 B.R. at 397 (reference withdrawn where litigation was in its early stages and "the bankruptcy court had not already expended judicial resources with respect to the Trustee's breach of contract claim.").

Keeping the Adversary Proceeding in the Bankruptcy Court would compel the parties to duplicate their efforts.  "[T]he fact that a bankruptcy court's determination on non-core matters is subject to *de novo* review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court."  *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993); *Dev. Specialists, Inc.*, 462 B.R. at 472 ("[A]ny recommendations it makes will need to be reviewed *de novo* in this Court. It would be inefficient to allow these proceedings to go forward, knowing that they will have to be substantially repeated."); *see*, *e.g.*, *Silverman v. Tudor Ins. Co. (In re Lenders Abstract & Settlement Serv.)*, 493 B.R. 385 (E.D.N.Y. 2013); *DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587 (S.D.N.Y. 2012); *In re Skyline Concrete Floor Corp.*, 410 B.R. 564, 568 (E.D. Mich. 2008);

*Wellman Thermal Sys. Corp. v. Columbia Cas. Co.*, 2005 U.S. Dist. LEXIS 45725 (S.D. Ind. Oct. 5, 2005); *Michaelesco v. Shefts*, 303 B.R. 249, 253 (D. Conn. 2004); *Allied Prods. Corp. v. Hartford Accident & Indem. Co. (In re Allied Prods. Corp.)*, 2003 U.S. Dist. LEXIS 2596 (N.D. Ill. Feb. 20, 2003); *Travelers Indem. Co. v. Babcock & Wilcox Co.*, 2002 U.S. Dist. LEXIS 2477 (E.D. La. Jan. 23, 2002); *Lawrence Group v. Hartford Cas. Ins. Co. (In re Lawrence Group, Inc.)*, 285 B.R. 784 (N.D.N.Y. 2002); *see also In re Ozier*, 132 B.R. 595, 603 (Bankr. E.D. Ark. 1991) ("The interests of judicial economy will best be served by referring the matter to the Article III district court.").

Allowing the District Court to adjudicate the Adversary Proceeding, and oversee *all pre-trial matters related thereto*, would promote judicial economy and expediency. *Dev. Specialists, Inc. v. Peabody Energy Corp. (In re Coudert Bros. LLP)*, 2011 U.S. Dist. LEXIS 135990, *18 (S.D.N.Y. Nov. 22, 2011). "Due to the fact that a District Court Judge must eventually preside over the jury trial in this matter, it would constitute a tremendous waste of judicial resources to permit the bankruptcy judge to continue to maintain jurisdiction over the issues presented in this litigation." *Gumport v. Growth Fin. Corp. (In re Transcon Lines)*, 121 B.R. 837, 838 (C.D. Cal. 1990). Thus, "efficiency [will be] enhanced" by an immediate withdrawal of the reference because non-core issues predominate. *Official Comm. of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.)*, 295 B.R. 211, 217 (D.N.J. 2003) (quoting *In re General Teamsters, Warehousemen and Helpers Union Local 890*, 124 F.3d 999, 1008 (9th Cir. 1997)); *see also Innovasystems, Inc. v. Proveris Scientific Corp.*, Civil Action No. 13-05077, 2013 WL 5539288, *3 (D.N.J. Oct. 7, 2013) (noting that judicial resources would be most efficiently allocated by withdrawal, given the availability of magistrate judges to assist with district court proceedings).

Moreover, an immediate withdrawal of the reference would allow the Bankruptcy Court to concentrate its resources on completing its administration of the Diocese's estate successfully, while the District Court focuses on the Adversary Proceeding. *Calascibetta v. Penson Fin. Servs. (In re U.S. Mortg. Corp.)*, 2012 U.S. Dist. LEXIS 55191, at *12 (D.N.J. Apr. 19, 2012) (citing *Shalom Torah Ctrs. v. Phila. Indem. Ins. Cos.*, Civil Action No. 10-6766 (FLW), 2011 U.S. Dist. LEXIS 35726, at *8 (D.N.J. Mar. 31, 2011); *see also Pelullo*, 1997 U.S. Dist. LEXIS 12372, at *8-9 (stating that going forward in the District Court would expedite the bankruptcy process).

Withdrawal can expedite the bankruptcy process significantly:

[…] withdrawal of the reference as to all of the…claims expedites the bankruptcy process because it eliminates the prospect of: (1) contemporaneous proceedings in this Court and the District Court; (2) an appeal from this Court's adjudication of the core claims; and (3) the District Court having to conduct a de novo review of proposed findings and conclusions of the undersigned bankruptcy judge after a trial in the bankruptcy court as to the one non-core claim. Thus, withdrawal of the reference will expedite the bankruptcy process because the District Court will hold one trial and issue one judgment and therefore allow the Trustee to administer the estate more quickly than if proceedings were held in both this Court and the District Court. Therefore, the Trustee will spend fewer estate funds litigating this suit to its conclusion, and use of fewer estate funds is certainly more efficient to the bankruptcy process.

*In re Align Strategic Partners LLC*, No. 16-35702, 2019 WL 2527221, at *4–5 (Bankr. S.D. Tex. Mar. 5, 2019). By withdrawing the reference, the Bankruptcy Court can focus on the administration of the bankruptcy case, thereby expediting the bankruptcy process.

Withdrawing the reference for the Adversary Proceeding now best serves judicial economy and reduces the costs to the parties.

### 4.  Factor 4--Withdrawal would not affect the uniformity of bankruptcy administration

This factor favors withdrawal when, as here, state contract law governs the claims at issue. *Residential Funding Co., LLC v. UBS Real Estate Secs., Inc.*, 2015 U.S. Dist. LEXIS 29952 (S.D.N.Y. Mar. 6, 2015) ("Here, the contract claims are based in New York state law and do not

13

concern substantive bankruptcy law.  Therefore, this factor generally would weigh in favor of withdrawing the reference."); *Hamilton v. Willms*, 2016 U.S. Dist. LEXIS 46758 (E.D. Cal. Apr. 5, 2016) (finding uniformity of bankruptcy administration not implicated by the district court's consideration of non-core issues).

Here, there is no risk to the uniformity of bankruptcy administration, because resolution of this Adversary Proceeding does not involve the consideration of bankruptcy law.  *Id*. (reference withdrawn where "the breach of contract claim involves issues of state contract and insurance law wholly separate from Lender's bankruptcy proceeding.").  All of the Insurance Coverage Claims arise under state law, not substantive bankruptcy law.  Therefore, withdrawal of the reference would not affect the uniformity of bankruptcy laws.  *See Kirschenbaum v. Fed. Ins. Co. (In re Ems Fin. Servs., LLC)*, 491 B.R. 196, 206 (E.D.N.Y. 2013) ("the Court finds that the resolution of this matter [*i.e.*, contract claims] does not require familiarity with the Bankruptcy Proceeding or bankruptcy law.").  The Adversary Proceeding contains no bankruptcy claims, and so this factor supports withdrawing the reference.

### 5.      Factor 5—Withdrawal would not promote forum shopping

Forum shopping exists where parties "exert inordinate effort for the purpose of seeking not merely a fair trial but a forum they consider more receptive to their cause, and [it] requires courts to squander public resources in adjudicating the propriety of manipulative efforts to gain access to the forum considered most hospitable to the litigants' interests." *Cummings v. U.S.*, 648 F.2d 289, 290 (5th Cir. 1981); *Agri-Process Innovations, Inc. v. Greenline Indus.*, LLC, No. 4:08CV00558BSM, 2008 WL 4126909, at *5 (E.D. Ark. Sept. 4, 2008) ("Forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances [of the]

14

action or where a party seeks to manipulate procedural devices to secure an advantage which, were those devices not available, it could not employ [them] to defeat its opponent's choice of forum.").

Accordingly, Courts have only found forum shopping in a motion to withdraw the reference when the motion to withdraw followed adverse decisions in the Bankruptcy Court. *See In re New York Trap Rock Corp.*, 158 B.R. 574, 577 (S.D.N.Y. 1993) ("Forum shopping efforts pursued by awaiting a decision relevant to the merits and then bypassing or filing a motion to transfer should not be rewarded with success."). Here, the Bankruptcy Court has issued no adverse decisions. Rather than causing the Courts to squander resources, U.S. Fire is seeking a more efficient resolution of the Adversary Proceeding. There is also no risk of forum shopping. U.S. Fire has advocated withdrawal of the reference of this Adversary Proceeding from the early stages of this litigation, as shown by the original motion filed in 2019 but denied without prejudice pending mediation. By granting this Motion, the issues raised in the Adversary Proceeding will be disposed of in the same forum, but with one set of briefs and argument, and without needless collateral litigation on the scope of the bankruptcy court's authority and related appeals. Moreover, the issues in the underlying bankruptcy case are entirely distinct from the coverage and other insurance-related issues arising in this Adversary Proceeding. *See, e.g., Allied Prods. Corp. v. Hartford Accident & Indem. Co. (In re Allied Prods. Corp.)*, No. 02 C 8436, 2003 WL 503805, at *2 (withdrawing the reference where "the bankruptcy court is in no better position to resolve the insurance dispute than a district court because its familiarity with the bankruptcy case has no bearing on the insurance issues").

Further, it is in the best interest of all parties for the Adversary Proceeding to be heard by a court "that is well-practiced in evaluating common law and statutory causes of action arising under non-bankruptcy law." *See Kohn v. Haymount Ltd. P'ship (In re Int'l Benefits Group, Inc.)*,

2006 U.S. Dist. LEXIS 58487, *11 (D.N.J. Aug. 21, 2006).  By seeking withdrawal of the reference, U.S. Fire is seeking only to have the Adversary Proceeding heard in and adjudicated by the proper forum (*i.e.*, the forum that can hold a jury trial and issue a final order).  *See, e.g., Joseph DelGreco & Co.*, 2011 U.S. Dist. LEXIS 10972.

### 6.    The Balance of the Factors Favors Withdrawing the Reference

The *Kelly* factors all favor withdrawal.  Critically, U.S. Fire has a jury right and the Insurance Coverage Claims are all non-core.  The U.S. Constitution prevents the Bankruptcy Court from ruling on either the Adversary Proceeding's legal or factual rulings.  This Court and a jury must determine these issues.  *See Vreugdenhil v. Hoekstra*, 773 F.2d 213, 215 n. 2 (8th Cir. 1985) ("[W]here a cause of action asserted is not a 'core proceeding,' and a party asserting it has demanded a jury trial, withdrawal . . .  may be appropriate, because under 28 U.S.C. § 157(c)(1) [the] bankruptcy court in such circumstances could not enter final judgment[.]") (citing *Macon Prestressed Concrete Co. v. Duke,* 46 B.R. 727, 730 (M.D. Ga. 1985)).  Moreover, because the Bankruptcy Court has not addressed any aspect of the Adversary Proceeding substantively, and cannot make final determinations, withdrawing the Adversary Proceeding now will aid judicial efficiency.  That is especially so where the Plaintiffs' Plan expressly calls for the Adversary Proceeding to proceed after confirmation of the Plan and assignment of insurance rights to a trust. There is no reason to leave this litigation of state law coverage issues in the bankruptcy courts long after the bankruptcy is concluded.

**IV.**      <u>**CONCLUSION**</u>

WHEREFORE, U.S. Fire respectfully request that the Court enter an order in the form

attached hereto withdrawing the Adversary Proceeding's reference to the Bankruptcy Court.


Dated: March 4, 2021

<div style="margin-left:auto">

By:   <u>s/Amy J. Woodworth</u>
Amy J. Woodworth (#026166X)
Meagher & Geer, PLLP
33 South Sixth Street, Suite 4400
Minneapolis MN 55402
(612)-338-0661
awoodworth@meagher.com

Michael J. Cohen
Admitted *pro hac vice*
Pamela J. Tillman
Admitted *pro hac vice*
Meissner Tierney Fisher & Nichols S.C.
111 E. Kilbourn Avenue, 19th Floor
Milwaukee, WI 53202
 (414) 273-1300
mjc@mtfn.com
pjt@mtfn.com

George R. Calhoun
Admitted *pro hac vice*
Ifrah PLLC
1717 Pennsylvania Ave., NW
Washington D.C.  20006
(202) 524-4147
george@ifrahlaw.com

***Attorneys for United States Fire Insurance Company***

</div>

17

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Bankruptcy Case No. 18-33707 (RJK) |
| Diocese of Winona-Rochester, | Chapter 11 |
| Debtor. | |
| Diocese of Winona-Rochester, | Adversary Proc. No. 18-03094 |
| Plaintiff, | Civil No: |
| v. | |
| UNITED STATES FIRE INSURANCE COMPANY, a Delaware corporation; CERTAIN UNDERWRITERS AT LLOYD'S, a foreign insurance syndicate; INTERSTATE FIRE & CASUALTY COMPANY, an Illinois corporation; NATIONAL SURETY CORPORATION, a Delaware corporation; 21st CENTURY CENTENNIAL INSURANCE COMPANY (f/k/a COLONIAL PENN INSURANCE COMPANY), a Pennsylvania corporation; ST. PAUL SURPLUS LINES INSURANCE COMPANY, a Delaware corporation; NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, a Wisconsin corporation, formerly BELLEFONTE INSURANCE COMPANY, a Kentucky corporation; MARKEL INTERNATIONAL INSURANCE COMPANY LIMITED, a U.K. private limited company, formerly TERRA NOVA INSURANCE CO. LTD., a U.K. private limited company; CATALINA HOLDINGS U.K. LIMITED, a private limited company, formerly EXCESS INSURANCE CO. LTD., a U.K. private limited company; SOMPO JAPAN NIPPONKOA INSURANCE COMPANY OF EUROPE LIMITED, a U.K. private limited company, formerly YASUDA FIRE AND MARINE INSURANCE CO. (U.K.) LTD., a U.K. private limited company; DOMINION INSURANCE CO. LTD., a U.K. private limited company; CX REINSURANCE COMPANY LTD., a private limited company, formerly CNA REINSURANCE OF LONDON LTD., a U.K. private limited company; STRONG HOLD INSURANCE CO. LTD., a U.K. private limited | |

| | |
|---|---|
| company; SPHERE DRAKE INSURANCE PLC (N/K/A SPHERE DRAKE INSURANCE LIMITED), a U.K. public limited company; ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota corporation, formerly ST. KATHERINE INSURANCE CO. PLC, a U.K. public limited company; ASSICURAZIONI GENERALI SPA, an Italy corporation,<br><br>                    Defendants, | |

## ORDER

---

This adversary proceeding came before the court on _____, on the motion of United States Fire Insurance Company to Motion to Withdraw the Reference to the Bankruptcy Court Pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011, and Local Rule 5011-1.

Based on the motions and file:

**IT IS ORDERED**:

1.  The reference for the above-captioned adversary proceeding is withdrawn from the Bankruptcy Court.

Dated: _____

                                        _____
                                        United States District Court Judge